## LOWELL et al. v. ASHTON.

## SAME v. BROADBENT (two cases).

### (District Court, D. Massachusetts. April 26, 1921.)

### Nos. 1084, 1092, 1093.

Bankruptcy ⚏303(3)—Evidence held to show creditors receiving payments had reason to believe debtor was insolvent.

In suits by trustees of a bankrupt against creditors of the bankrupt, who had recovered from him amounts loaned to him shortly before his bankruptcy, evidence that the newspapers had published articles charging that the bankrupt's operations were fraudulent, and testimony by the creditors that they demanded their money back because they distrusted the bankrupt, *held* to show that the creditors had reason to believe that the bankrupt was insolvent at the time he repaid money to them, so that such payments amounted to preferences.

In Equity. Separate suits by James A. Lowell and others, as trustees in bankruptcy of Charles Ponzi, against Edward Ashton, against Fred Broadbent, and against Nellie Broadbent. Decrees directed for plaintiffs.

Hugh D. McLellan, of Boston, Mass., for plaintiffs.
Raphael A. A. Comparone, of Lawrence, Mass., for defendants.

MORTON, District Judge. These are three suits in equity brought by the trustees of Charles Ponzi, a bankrupt, to recover alleged preferences received by the defendants. The cases were heard together by agreement of parties in open court.

Certain basic facts are applicable to all the cases. Ponzi, under the name of the Securities Exchange Company, did an extensive business, which, briefly stated, consisted in borrowing money, for which he issued obligations whereby he promised to repay, 90 days after date, the amount invested plus 50 per cent. His business was a pure swindle, by which a large number of persons were taken in. On July 26, 1920, it became generally known that he was under investigation and had ceased to accept any further loans. On August 2, 1920, it was openly published that he was insolvent and that his pretended business was a fake. On August 9, 1920, a petition in bankruptcy was filed against him. On October 25, 1920, he was adjudicated bankrupt, and the plaintiffs were later appointed his trustees. At all times during the period covered by these cases he was deeply insolvent, and the effect of each of the payments here in question was to give the person receiving the payment a preference over other creditors of the same class.

The foregoing facts are applicable to all the cases. Beyond this point it will be necessary to consider the cases separately.

As to the case against Edward Ashton:

Ashton lent Ponzi $300 on July 13th, upon the agreement above stated. He received repayment of it from Ponzi between 10 and 11 a.

⚏For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

m. on August 2d, without interest or increase. On the morning of August 2d the Boston Post had published with prominent headlines the statement that an accountant declared that Ponzi was hopelessly insolvent and had sent no money to Europe recently and had received none from there. The defendant told Mr. Schwartz that he withdrew his money on August 2d because he feared Ponzi could not pay according to agreement, and he was afraid of the court proceedings in which Ponzi appeared to be involved These were the motives which actuated him to demand payment of his loan at that time. He was in all probability aware of the statement which had been so prominently circulated in the Post that morning.

On all the evidence, I find that Ashton, at the time when he received payment of his loan, had reasonable cause to believe that Ponzi was insolvent, and that the effect of the payment to him (Ashton) would be to give him a preference over other creditors in his class.

As to the case against Fred Broadbent:

This defendant loaned Ponzi $1,000 on July 26th upon the agreement above stated, and received in return a note or voucher No. 4856, calling for the repayment of $1,500, 90 days after date. Oral representations were made to him that the $1,500 would be paid in 45 days after date. That evening Broadbent saw statements in the newspaper that Ponzi was under investigation and had ceased to accept further "investments" so called. Broadbent became doubtful about his loan, and he went down the next day and gave notice of withdrawal. On the next day—i. e., on July 28th—he received from Ponzi payment in full of what he had loaned him two days before, viz. $1,000. The defendant testified that he did this because he had lost faith in Ponzi; that by losing faith he meant that he did not feel as though Ponzi could return the money; that he did not feel that Ponzi's business was an honest sort of business, nor that he could return the money as he had agreed. In other words, the defendant evidently thought from the information which he then had that Ponzi's business was not legitimate, but that it was probably a swindle by which he (the defendant) had been caught. He accordingly made haste to get his money out. The information on which he reached his conclusion does not fully appear, nor is it necessary that it should. The conclusion was right, and the information presumably warranted it. Mr. Broadbent testified with an integrity and truthfulness which command respect. On his own testimony, the inference seems to me irresistible that, at the time when he demanded and received payment of his loan, he had reasonable cause to believe that Ponzi was insolvent; and I so find.

As to the case against Nellie Broadbent:

This defendant lent Ponzi $500 on July 26, 1920. She received payment of it on August 5th following. She testifies that she saw the statements in the newspaper of July 26th and August 2d, which have been above referred to; that after reading them she thought that Ponzi's scheme was not honest, and that she ought to get her money out; that she wanted to get her money out as soon as she could and while she could. This defendant is a working woman whose straight-

forward honesty in regard to the matter increases one's sympathy for her. But it is clear that at the time when she obtained repayment of her loan, she had reasonable cause to believe that Ponzi was insolvent; and I so find.

The plaintiffs may present decrees.